660 So.2d 919 (1995)
STATE of Louisiana
v.
Clarence WILLIAMS.
No. 94-KA-0622.
Court of Appeal of Louisiana, Fourth Circuit.
August 23, 1995.
Application Dismissed November 3, 1995.
*920 Rudy W. Gorrell, New Orleans, for defendant.
Harry F. Connick, District Attorney of Orleans Parish, Susan M. Erlanger, Assistant District Attorney of Orleans Parish, New Orleans, for the State.
Before BARRY, LOBRANO and PLOTKIN, JJ.
PLOTKIN, Judge.
Defendant, Clarence Williams, was charged by bill of information on August 15, 1984, with armed robbery, a violation of La. R.S. 14:64. He was arraigned August 27, 1984, and pled not guilty. On January 17, 1985, a twelve-member jury found him guilty as charged. On January 31, 1985, he was sentenced to sixty years at hard labor as a third offender under La.R.S. 15:529.1. He filed a motion for appeal with this Court. After an errors patent review, this Court affirmed his conviction and sentence, noting *921 that it would not correct an illegally lenient sentence that failed to deny the defendant eligibility for parole, probation, or suspension of sentence. State v. Williams, KA-4296 (La.App. 4th Cir. Apr. 11, 1986). The defendant moved to correct his sentence, and on October 25, 1990, the trial court corrected his sentence to deny the benefits. The defendant brought this out-of-time appeal pursuant to Lofton v. Whitley, 905 F.2d 885 (5th Cir.1990).

FACTS
On January 20, 1984, at approximately 7:40 a.m., Ramona Cahee arrived for her job as a teacher at Dunn Elementary School, located in the Desire Housing Project. As she stepped out of her car in the parking lot, a man approached her with a gun, threatened to shoot her, and took her purse, which contained a wallet, a checkbook, credit cards, and her husband's payroll check. On January 26, 1984, a man attempted to cash a payroll check at the Circle Food Store on St. Bernard Avenue in New Orleans. Because the cashier, Bonnie Marshall, recognized that the man had presented a phony identification card, she called the company shown as the drawer of the check and discovered that the check in question had been stolen. As Marshall attempted to notify her manager, the man who had attempted to cash the check fled the store. A computer check of the phony identification card bearing Ramona Cahee's husband's name, Alfred Screws, revealed that the social security number on the card belonged to the defendant.
Both Ramona Cahee and Bonnie Marshall identified the defendant out of a photographic lineup and at trial. Cahee identified the defendant as the man who robbed her on the morning of January 20, 1984, and Marshall identified the defendant as the man who attempted to cash the stolen payroll check on January 26, 1984.

ERRORS PATENT
Counsel complied with the procedures outlined by Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), as interpreted by this Court in State v. Benjamin, 573 So.2d 528 (La.App. 4th Cir.1990). Counsel's detailed review of the procedural history of the case and the facts of the case indicate a thorough review of the record. Counsel has moved to withdraw because he believes, after a conscientious review of the record, that there are no non-frivolous issues to be raised on appeal. Counsel has reviewed all available transcripts and has found no trial court rulings that arguably support the appeal. The defendant has filed a pro se brief.
As required by State v. Benjamin, this Court has performed an independent, thorough review of all the pleadings filed in the district court, all minute entries of the district court proceedings, the bill of information, and all transcripts contained in the appeal record. The defendant was properly charged by bill of information with a violation of La.R.S. 14:64 and the bill of information was signed by an assistant district attorney. The defendant was present and represented by counsel at arraignment, all hearings, trial, and sentencing. The sentence of sixty years at hard labor without benefit of parole, probation, or suspension of sentence on its face is legal in all respects.[1] The State proved every element of armed robbery beyond a reasonable doubt. An independent review reveals no non-frivolous issues and a review of all transcripts contained in the appeal record reveals no trial court ruling that arguably supports an appeal.
Accordingly, counsel's motion to withdraw is granted.

PRO SE ASSIGNMENTS OF ERROR NUMBERS ONE AND THREE
The defendant argues he was denied a hearing on his motion to suppress the identification. A hearing was held September 26, 1984, and the motion was denied. Defendant also argues that he was prejudiced by a suggestive lineup.
After the foiled attempt to cash the payroll check, the Circle Food Store mailed Screws his check and the fake identification card the defendant used in attempting to cash the *922 check. Screws testified that he brought these to the police department without bringing them home or showing them to his wife. The defendant argues the wife must have seen the card with his picture on it such that her subsequent identification of him was tainted.
These assignments of error are without merit. All of the evidence adduced at trial establishes that Cahee did not see the card before she identified the defendant. Defendant's argument to the contrary is mere assertion and is not supported by any evidence. As such, we reject his claims that the lineup was suggestive and that the trial court erred in denying him a hearing on the motion to suppress the identification.

PRO SE ASSIGNMENT OF ERROR NUMBER TWO
The defendant argues the store manager, rather than the cashier, mailed the check to Screws. Essentially, defendant complains that the chain of custody was broken. We find this argument to be misplaced. Because the check and the identification card were susceptible of visual identification by both Screws and Marshall, there was no need to prove up the chain of custody. See, e.g., State v. Dukes, 609 So.2d 1144, 1159 (La.App. 2d Cir.1992), writ denied, 618 So.2d 402 (La.1993) ("Identification can be either by a witness who identifies the evidence in court, or by a chain of custody.") (emphasis added). Thus, the allegedly unresolved question of who mailed the check does not require that such evidence have been excluded at trial. Rather, any doubt as to how Screws received the check goes to the weight of the evidence, not to its admissibility. See State v. Tarver, 521 So.2d 601, 606 (La.App. 1st Cir.), writ denied, 525 So.2d 1056 (La.1988). This assignment of error is without merit.

PRO SE ASSIGNMENT OF ERROR NUMBER FOUR
By this assignment of error, defendant argues the State should have given him a copy of the police report because Cahee's initial description of him, contained in the report, was not accurate. It is impossible to tell from the record whether the State gave the defendant the report, although initial police reports are routinely given to the defense. In any event, the supposed inconsistencies between Cahee's description in the report and the defendant's own description of himself in his pro se brief are insignificant and Cahee was confident in her identification of defendant as the person who robbed her. Her identification was corroborated by Marshall, who testified that defendant was the man who attempted to cash the stolen payroll check on January 26, 1984. As such, even assuming that defendant did not, in fact, obtain a copy of the police report, the description contained therein does not constitute exculpatory evidence, nor is there a reasonable possibility that the production of such evidence would have changed the trial's outcome. See State v. Duncan, 94-1045, p. 12 (La.App. 4th Cir. 12/28/94), 648 So.2d 1090, 1099, writ denied, 95-0662 (La. 6/30/95), 657 So.2d 1028. Thus, this assignment of error is without merit.

PRO SE ASSIGNMENT OF ERROR NUMBER FIVE
The defendant argues the trial court should not have allowed evidence that he gave an alias to the arresting officer because it was impermissible evidence of other crimes, namely resisting arrest. As a prerequisite to the admissibility of evidence of other crimes, the State must within a reasonable time before trial furnish in writing to a defendant a statement of the acts or offenses it intends to offer, describing same with the general particularity required of an indictment or information. State v. Prieur, 277 So.2d 126, 130 (La.1973). However in Prieur, the Louisiana Supreme Court expressly recognized that "res gestae" evidence is an exception to the prohibition of "other crimes" evidence. Res gestae events constituting other crimes evidence are deemed admissible because they are so nearly connected to the charged offense that the prosecution could not accurately present its case without reference to them. State v. Haarala, 398 So.2d 1093, 1097 (La.1981). A close connexity in time and location is required between the charged offense and the other crimes evidence. Id. Often, evidence of other crimes that is relayed by a police *923 officer's narrative of the events that led up to the arrest is admitted as res gestae. See, e.g., State v. Granier, 592 So.2d 883, 886 (La.App. 4th Cir.1991), writ denied 600 So.2d 1334 (La.1992).
For example, in State v. McGuire, 577 So.2d 1120, 1122-23 (La.App. 1st Cir.), writ denied, 581 So.2d 704 (La.1991), the court held that evidence of the murder defendant's escape from prison in another state twelve to nineteen hours before meeting the victim was admissible as an integral part of the subsequent murder and robbery of the victim. Likewise, the defendant in State v. Edouard, 512 So.2d 579, 581-83 (La.App. 3d Cir.1987), was charged with and convicted of burglary of an inhabited dwelling. The only items stolen were the victim's bank book and some bank documents. The defendant was apprehended two days after the burglary when he attempted to cash a check drawn on the victim's name. The defendant was found to be in possession of the bank documents. The court allowed the officers to testify about the facts of the defendant's apprehension, noting that the evidence constituted part of the res gestae of the crime. However, in State v. Jenkins, 573 So.2d 1214, 1218-19 (La.App. 4th Cir.1991), the defendant was arrested one week after the crime in question had been committed at an apartment that was not his own. In the apartment were two handguns, neither of which was the gun that had been used in the murder, and drugs. This Court found evidence of the drugs admissible because it was introduced to impeach the defendant. However, the court found that the evidence of the guns did not constitute part of the res gestae. The court found that the error in admitting the evidence was harmless because the evidence clearly established that the apartment did not belong to the defendant.
In State v. Harris, 573 So.2d 1195 (La. App. 4th Cir.1991), this Court found that evidence that the defendant was arrested because there was a warrant outstanding for his arrest was admissible because "[a]ssuming that this comment is specific enough to constitute reference to another crime, it was nonetheless admissible, because it was offered `to explain the sequence of events leading to the arrest of the defendant.'" Id. at 1198 (quoting State v. Granier, 563 So.2d 1354 (La.App. 4th Cir.1990), writ granted in part, denied in part, 578 So.2d 528 (La. 1991)). In addition, the court found that "[e]ven if the comment was improper, the error was harmless given the fact that the defendant himself acknowledged at trial that he had been convicted of at least two felonies." Id.
Here, even if the evidence that the defendant gave an alias was specific enough to constitute a reference to another crime, it explained the sequence of events leading to the arrest. As such, it comprises part of the res gestae and was therefore admissible. This assignment error is thus without merit.

PRO SE ASSIGNMENT OF ERROR NUMBER SIX
The defendant argues the trial court improperly admitted evidence of another crime, attempted forgery. The Louisiana Supreme Court, however, has held such evidence is admissible. In State v. Donahue, 408 So.2d 1262 (La.1982), the defendant armed robbed the victim and stole his wallet. The defendant was arrested later when he tried to use a credit card; the store employee became suspicious when the address and signature the defendant gave did not match the name and address on the card. The defendant was subsequently arrested and convicted. In affirming the conviction, the supreme court stated that "[e]vidence of the use of a stolen credit card is independently admissible to prove that the user of the card was a principal in the robbery in which the credit card was taken." Id. at 1265 (citing State v. Scott, 320 So.2d 538 (La.1975)).
The evidence in this case did not rely on any exception to the prohibition on other crimes evidence. It was independently admissible to prove that defendant had committed the armed robbery of Cahee. This assignment of error is without merit.

PRO SE ASSIGNMENT OF ERROR NUMBER SEVEN
The defendant argues the trial court erred when it refused to charge the jury on *924 the limited use of other crimes evidence.[2] In denying defense counsel's objection, the trial court observed that "there was no comment about crime, or about any other criminal activity. And I think to talk about other crimes, I think, may have been prejudicial to the defendant. And for that reason, I didn't do it." By this, the trial court was suggesting that the reference to other crimes, to the extent there was one, was not specific, and that a jury charge on the point might have actually drawn attention to the other crimes evidence, thereby prejudicing the jury. The trial court's inclination under the facts of the case appears correct in light of the fact that a reference to giving an alias does not constitute evidence that a jury would immediately connect to the crime of resisting arrest.
As to evidence of the attempted forgery, in Donahue, the defendant complained on appeal that the trial judge should have instructed the jury on the limited purposes for which other crimes evidence may be used as required by State v. Prieur. The court rejected the argument, stating as follows: "The requirements of Prieur apply when other crimes evidence is admitted under the exceptions outlined in LSA-R.S. 15:445 and 15:446. The other crimes evidence in this case that related to appellant's attempted use of the stolen credit card does not depend on those exceptions for its admissibility. It is independently admissible and therefore the instructions required by Prieur were not required to be given in this case." Id. (citations omitted). The same holds true in this case.
This assignment of error is without merit.

PRO SE ASSIGNMENT OF ERROR NUMBER EIGHT
The defendant complains that the trial court erroneously instructed the jury on reasonable doubt. The transcript does not include the jury charges. However, the transcript does list defense counsel's objections to the jury charges and reveals that no objection was made to the reasonable doubt charge at the time the trial court delivered it.
In State v. Dobson, 578 So.2d 533, 534 (La.App. 4th Cir.), writ denied, 588 So.2d 1110 (La.1991), this Court held that a contemporaneous objection must be entered when the jury instruction is given in order to preserve any claim on appeal. See also La. C.Cr.P. art. 841; State v. Wolfe, 630 So.2d 872 (La.App. 4th Cir.1993) (holding that Dobson is good law and that defendant is required to object to allegedly defective jury charge at the time it is given), writ denied, 94-0448 (La.10/28/94), 644 So.2d 648. By failing to lodge an objection to the reasonable doubt instruction when it was given, the defendant thus waived this argument. Consequently, this assignment of error is without merit.

PRO SE ASSIGNMENT OF ERROR NUMBER NINE
Defendant asserts the trial court erred in failing to advise him of his constitutional rights before allowing him to plead guilty to the multiple bill. Specifically, defendant argues he was not advised of his right to remain silent.
At the time defendant was sentenced, Louisiana Revised Statute 15:529.1(D) provided as follows:
If, at any time, either after conviction or sentence, it shall appear that a person convicted of a felony has previously been convicted of a felony under the laws of this state, or has been convicted under the laws of any other state, or of the United States, or of any foreign government or country, of a crime, which, if committed in this state would be a felony, the district attorney of the parish in which subsequent conviction was had may file an information accusing the person of a previous conviction. Whereupon the court in which the subsequent conviction was had shall cause the person, whether confined in prison or otherwise, to be brought before it and shall *925 inform him of the allegation contained in the information and of his right to be tried as to the truth thereof according to law and shall require the offender to say whether the allegations are true. If he denies the allegation of the information or refuses to answer or remains silent, his plea or the fact of his silence shall be entered on the record and the judge shall fix a day to inquire whether the offender has been convicted of a prior felony or felonies, as set forth in the information.
The jurisprudence clearly recognizes that this section of the multiple offender statute requires that before allowing a defendant to plead guilty to a multiple bill, the sentencing court must advise the defendant of his right to a "formal hearing" at which the state must prove its case for the multiple offender status. Implicit in this requirement is the additional requirement that the defendant be advised of his constitutional right to remain silent. State v. Johnson, 432 So.2d 815, 817 (La.1983); State v. Vincent, 439 So.2d 1124, 1126-27 (La.App. 4th Cir.1983), writ denied, 472 So.2d 913 (La.1985).
In this case, the trial court said that it understood that the defendant wanted to plead guilty to the multiple bill. It asked the defendant if he was aware of the potential sentence. It asked the defendant if he had been convicted of the prior offenses. It then sentenced the defendant. Thus, the record shows that defendant was not advised of his right to remain silent as required. Accordingly, the defendant's sentence as a multiple offender must be vacated and the case remanded for re-sentencing. State v. Desmond, 524 So.2d 147, 148-50 (La.App. 4th Cir.1988); State v. Covington, 522 So.2d 1168, 1170-71 (La.App. 4th Cir.1988).

PRO SE ASSIGNMENT OF ERROR NUMBER TEN
The defendant complains that when he was re-sentenced on October 25, 1990, he was illegally sentenced to a more severe sentence in that the new sentence denied him eligibility for parole, probation, or suspension of sentence. At that hearing, the trial court cautioned the defendant that if he persisted in his motion to correct an illegally lenient sentence, the trial court would correct the sentence to in fact give the defendant more time. The defendant stated that he in fact did want his sentence corrected. The trial court corrected relator's sentence to sixty years at hard labor without benefit of parole, probation, or suspension of sentence. Later, in writ 91-K-2286, defendant argued that the October 25, 1990, sentence should be vacated in light of the guidelines set forth in State v. Desdunes, 579 So.2d 452 (La.1991), State ex rel. Jackson v. Smith, 578 So.2d 1150 (La. 1991), and State v. Washington, 578 So.2d 1150 (La.1991), which hold that if the intent of the sentencing judge at the original sentencing was to sentence the defendant without benefit of parole, probation, or suspension of sentence, then re-sentencing the defendant to the same sentence without parole, probation, or suspension of sentence is appropriate. On December 4, 1991, this Court issued an order to the trial court either to correct the October 25, 1990, minute entry to reflect compliance with Desdunes and its progeny or, if the guidelines were not followed, to vacate the sentence and resentence the relator in accordance with the guidelines. In writ 93-K-0865, defendant complained to this Court that the trial court failed to comply with this Court's order in writ 91-K-2286. On September 15, 1993, the trial court stated that its intent at defendant's original sentencing was to sentence the defendant without benefit of parole, probation, or suspension of sentence. Accordingly, the trial court complied with Desdunes and its progeny. This assignment of error is without merit.

CONCLUSION
For the foregoing reasons, we hereby affirm defendant's conviction. However, we reverse the multiple offender adjudication and remand the case for re-sentencing on the multiple bill. As noted earlier, counsel's motion to withdraw is granted; the trial court is hereby order to appoint new counsel to represent defendant during resentencing on the multiple bill.
CONVICTION AFFIRMED; SENTENCE REVERSED AND REMANDED.
NOTES
[1] We say the sentence is legal "on its face" because as we later note, the enhanced sentence is, in fact, improper because defendant was not informed of his right to remain silent during the multiple bill hearing.
[2] At the close of trial, the defense argued State v. Goza, 408 So.2d 1349 (La.1982), to support its objection. That case is not applicable here. Goza held that evidence that the defendant was involved in narcotics transactions, that her husband found out about it, and that she killed him to silence him was offered by the State as evidence to prove motive to commit the crime. Because the evidence was so prejudicial to the defendant, the court held that the State should have given the defense notice prior to trial. Id. at 1353-54.